Opinion of the Court, by
Ch. J. Boyr.E.
THIS was an action of detinue for sundry slaves. The cause was tried upon (he general issue, with leave to give special matter in evidence. On the trial, it appeared that in the year 1777, Isaac Hickman died poss sessed, amongst other estate, of a slave, the mother of those in controversy in this suit, having previously made a nuncupative will, which was, after his death, reduced to writing, and proved and admitted to record in the county court of Frederick county, Virginia, where he had lived.
By his will he declared “ that should he die, he would have his estate disposed of in the following manner: That if his wife should be with child, and that a son, he gave him all his land and one negro boy near his own age, one horse, saddle and bridle, and four head of sheep, to be paid to him at the age of nineteen years; butshould.it be a daughter, then the land to be divided between such child and his daughter Elizabeth, as likewise the rest of his estate. And if his wife should not be with child, or the child not live, and his daughter should die before the age of sixteen, or the day of marriage, then his wife to have all his estate as long as she lives; after her death, it is to be equally divided between her brothers and sisters; but in case his daughter, Elizabeth, should come to age or marry, then his wife to have half his personal estate. He further devised that his wife should have fiftv pounds currencv. *26 moré than Tier part, to finish th’e building on the iari’d, and that a negro boy, Daniel, should be sold to pay the: above sum,” &c.
It was agreed by the parties, that at the death of the testator, his wife Was ehsienfe ofa male child, who was afterwards born, and bore the name of William Hickman, and lived to the age ofand before his death hud married and had two children by his wife, who, and her children, are-now livingand residing in this State; and it was proved by the plaintiffs, that the plaintiff, Mrs. Chinn, was Elizabeth, the daughter of the testator mentioned in his will; that on the -day of-, she intermarried with a certain Jeremiah Rust, in the 'Slate of Virginia, Who with her, 'afterwards moved to this State, where he died before the institution of this -suit; and that pending the suit, she intermarried with ■her present husband, Chinn. The plaintiffs also proved, that the wife of the testator, after his death, inter-marribd'with'Peter Rust, and had died in Virginia some years before the institution of this suit; and that' the slaves in controversy were the descendants of a negro woman, the property of the testator, at the time of his death, and Which had been retained 'by the widow of the testator, as apart other portion under the will; and that the slaves in controversy were in the possession of the defendant at the institution of the suit, and claimed by her in virtue erf n gift from Pete'r Rust, who had married the widow of the testator. Seme other matters were given in evidence'; but as they do not appear to be material to the points of law arising in the case, they need not be stated.
A verdict was rendered for the plaintiffs, by the consent of the parties, subject to the opinion of the court, as to the interest which the plaintiff, Elizabeth, took under the will of her father, and whether, if the negroes, or any of them in controversy, passed to her by the will or by descent, the children and heirs of William Hickman, the posthumous son of the testator, ought to have joined in the suit, and if they ought to have joined, whether that matter ought to have been pleaded in abatement; and it was agreed that judgment should be rendered agreeable to the opinion of the court, subject to exceptions.
, The circuit court being of opinion that the widow of the testator took only a life éstate in the personal ds- *27 tale devised ioherby the will, and that the remainder of that devised to her, was not disposed of by the will, and descended in equal portions to the plaintiff, Eliza-betb, and William Hickman, the posthumous son, on the death of the widow, decided' that his children and heirs ought to have joined in the suit, and.that this matter could'he taken advantage of on the trial, without being pleaded in abatement, and direeted-a judgment to. be entered as in case of a nonsuit. Á judgment'was accordingly so entered, and the plaintiffs have appealed-to this court.
Opinion of the circuit “l11*"
(1) Slaves in. Virginia in ^10^’0®^777* talo, ami de-spen’d&d ty tho eUc°t “
(f^vriie act of the colour-al -kegisla-1748*' slaves personal estate, ne-becauÜTne-ver'received the royal as-son(:'
^nostali> may pass 3 * without ex-if there be a1 necessary im-location,
^ fa> ther devises, thero' n^s^on "lie shall have a certain prop-that&tbsres»--idueofhises-tato, be e-ed between^'" der and his daughter Eh; if there be no ch'ild andUE. die, the wife to have the for°life^re- 6 mainder over to others; # wife uAiave* half his personal estate; a ous^soa is born and E. lives: Held, the*wife each tako a móiety of the residue of the tatekffee?
*27 (1) With respect to the interest ofihe plaintiff, Mrs Chinn, in the slaves in controversy, whatever" it may be, it evidently must be derived from the will of the testator, and cannot have been cast upon her by descent; for the posthumous son was, as the law at the death of the testator stood in Virginia, the only heirof his' real estate, and slaves were then, and- had long been, and continued to be until the separation of this Slate from Virginia, real- estate," and were made to peseend by law upon the heir, as lands descended.
(2) The colonial Legislature had, indeed, passed an act in 1748,declaring slaves personal-estate; but that act never received the royal assent, which was necessary to give it legal efficacy, and, of course, it never-became the law of the land. It is, therefore, perfectly clear, that Mrs. Chinn can have no interest in the slaves ín controversy, by descent from-the testator.
(3) But-what-interest she has derived from the will,is a poinboi-raore difficulty. In the event, which actually happened, of the birth of a posthumous son, the. devise to him is sufficiently certain; but of. the residue of the estate, the will has made no express disposition; for all the other devises expressly made.in the will, are predicated upon the happening of-othei’.events. An estate, however, may pass by will, without being express--, ly devised. It is sufficient-for (hat purpose, if there be-a necessary implication, that (he estate should pass, and-we think, taking the whole will together, it is nccessa-rily and unavoidably implied, that t-he testator ed the residue of his estate, after the devise to his son, should be divided between his wife and his daughter, Elizabeth, now Mrs. Chinn.
(4) It is plain, that the (estator meant to dispose his whole estate by his will, and from the specific do- *28 v¡Se to the son, the inference is inevitable, that the tes-, tot01- did not intend that his son should have any part of the residue of his estate, and as he afterwards directs his wife to have one half of his personal estate, in case his daughter, Elizabeth, should attain the age of six-*een> or maiTy> b *s necessarily implied, that the per-sonal estate was, on the happening of either of those events, both of which,'in fact, took place, to go to his wjpe ancj daughter. It is true, that these events were,according to the grammatical construction of the will, predicated upon the condition that his wife should not ke wjth child, or the child should not live, events which did not 'happen, instead of being predicated upon the birth of a posthumous son, the event which actually did happen; but as the whole estate was intended to be disposed of by the testator, and the son could not take, under the will, the residue of the estate, not devised to him, and as the testator’s daughter, Elizabeth,lived bc-y°nd the age of sixteen and married, on either of which events, his wife was to have one half of his personal es-tate, the implication necessarily arises, that the person-es*:a*:e no*: devised to the son, should be equally divided between his wife and daughter,
(5) Slaves deviscTunder the general appellation estateS°unless a different intention be indicated.
(5) Slaves were, indeed, as we have already observ-e¿¡5 declared by law to be real estate, and directed to descend as lands descended, to the heir aflaw. But it does not follow that the testator, by the devise of his personal estate, did not intend that his slaves should Pass5 f°r although slaves were by law made real estate, for the purposes of descent and dower, and perhaps some others, yet they, had in law many of the attributes Persona' estate. They would pass by a nuncupative will, and lands would not; they were liable to be sold for the payment of debts, and lands were not; they could be limited, in a grant or devise, no otherwise than personal chattels, and persona] actions might be brought to recover the possession of them. Besides, they were in their nature personal estate, being moveable property, and such as might attend the person of the proprietor wherever he went, and in practice they were so considered and treated by the people in general. When, therefore, a man devised his personal estate, he must be understood to intend, that his slaves should pass thereby, unless he used sotne expressions indicating a *29 different intention, and in this case, the testator-has used no such expression.
(6) A'devise of the whole of certain property fdr life on one contingency, and in another event half the property, without more saying; in the latter case, the fee passes..
(7) One co, tenant cannot maintain an action against another, for the. recovery of the possession of a slave.
Talbot and Crittenden, for appellants; Ilaggin and Huston, for'appellee.
The circuit court seems to have thought that the slaves passed to the wife, by the devise to her of one half of the personal estate; but that court was of opinion, that she only took an estate for life in them. In this opinion we cannot accord. The devise to the wife is without any limitation; and a devise of personal estate, without limitation, always carries with it a fee simple estate in the thing devised.
(6) It is true, that on the events happening, which would, under the will, have given her a right to the whole real and personal estate, the testator limited it to her for life, and after her death devised it over to his brother and sisters; but surely it does not follow asa consequence, that on the happening of the events which entitled her, under the will, to only one half of the personal estate, it was the intention of the testator that she should have but a life estate in it. .On the contrary, as in the former case, there was an express limitation to her for life, and a devise over to others, and. in the latter case there was no such limitation or devise over, the inference is inevitable, that it was the intention of the testator that she should, in the latter case, take an absolute and unlimited estate.
Though in this respect we differ from the circuit court, it does not result that the judgment rendered by that court is erroneous. On the contrary, we apprehend, though the judgment may he correct on the supposition that the principles assumed by the circuit court were sound; yet it is more clearly so, upon the grounds we have placed the rights of the parties.
(7) For if the widow of the testator be, as we have supposed, entitled under the will to a moiety of the slaves, the plaintiff can only be a joint tenant or tenant in common with the defendant, who holds under the right of the widow; and it is indisputably settled, that one joint tenant or tenant m common, cannot maintain an action against the co-tenant, to recover the possession.
The judgment must he affirmed with costs.